UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AKO GILMORE,

        Petitioner,

                            Case No. 1:10-cv-1049

v.

                            Hon. Robert J. Jonker

CARMEN PALMER,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner, Ako Gilmore, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

### I.      Background

Defendant's convictions arise from the shooting death of Allen Redd, on September 11, 2006, in a garage located at 1318 Ohio Street in Lansing. The prosecution's theory at trial was that defendant and Lance Jones conspired to rob Redd of money and drugs at gunpoint and that Redd was killed during that robbery. The defense claimed that while defendant admittedly was present at the time of Redd's murder, he was not a participant in any plan or attempt to rob Redd, but instead merely tried, unsuccessfully, to intervene in an altercation between Jones and Redd.

*People v. Gilmore*, No. 285080, 2009 WL 2448150 at *1 (Mich. App. Aug. 11, 2009) (footnote omitted). "Jones was tried separately and, on August 28, 2007, was convicted of murder, conspiracy to commit armed robbery and felony firearm." *Id.* at fn. 1.

Following a jury trial, petitioner was convicted on February 1, 2008 of felony murder, M.C.L. § 750.316(1)(b) and conspiracy to commit armed robbery, M.C.L. § 750.157a. *Id.* at *1.[1] Petitioner was sentenced to life in prison without the possibility of parole for the murder conviction and to a concurrent sentence of 240 to 600 months imprisonment for the conspiracy conviction. *See* Sent. Trans. at pp. 7-8 (docket no. 20); *People v. Gilmore*, 30th Cir. Ct. Case No. 06-001329-FC-C30 (Judgment of Sentence) (March 13, 2008) (docket no. 22).

Petitioner, through counsel, raised four issues in his direct appeal to the Michigan Court of Appeals:

I.  Defendant's convictions must be reversed where there is insufficient evidence that he conspired to commit the predicate felony of armed robbery. The conviction violates defendant's constitutional right to due process of law. US Cons, Amends V, XIV; Mich Const, Art I, § 17.

II.  Newly discovered evidence reveals that prosecution witness Charles Smith committed perjury at defendant's trial. The issue is perjury, not impeachment or recantation. The denial of defendant's request for a new trial violated due process of law. In addition, the trial judge invaded the province of the jury when it found that the new evidence would not have altered the jury's finding of guilt. US Cons, Amends V, XIV; Mich Const, Art I, § 17.

III.  Trial counsel was ineffective under the Sixth Amendment when, with the exercise of reasonable diligence, being a short walk to the Clerk's Office to examine a co-defendant's file he would have learned about Mr. Garrett's testimony but counsel failed to do so. As such defendant was denied due process of law and his right to a fair trial.

IV.  Defendant is entitled to a new trial where the state violated his due process rights by failing to disclose materials that revealed that their

---

[1] The Court notes that the jury also found petitioner guilty of armed robbery. *See* Trial Trans. 6 at pp. 986-89 (docket no. 19). However, upon the prosecutor's motion at the sentencing, the trial court dismissed the armed robbery conviction as well as a sentencing enhancement of habitual offender third offense. Sent. Trans. at pp. 3-8 (docket no. 20).

"informant" might have lied under oath, thereby denying defendant
of his due process right to a fair trial, US Cons, Amends V, XIV;
Mich Const, Art I, § 17.

Petitioner's Brief (docket no. 22).

Petitioner filed a *pro se* supplemental brief raising three additional issues (in his

words):

V.      Did the prosecutor deny the defendant a fair trial when he abandoned
        his clear legal duty to protect the rights of the defendant by admitting
        irrelevant evidence into the trial that had no relevance to the
        defendant, and which caused considerable prejudice and constituting
        plain error.  (a)  irrelevant evidence (AR-15 rifle)

VI.     Defendant was denied his Sixth Amendment Constitutional right to
        the effective assistance of trial counsel, and entitled to a *Ginther*
        hearing to develop testimonial record to support his claim.

VII.    Defendant was deprived of his Const. XIV rights of due process when
        Afro-Americans were excluded from the jury.

Petitioner's Supplemental Brief (docket no. 22).

The Michigan Court of Appeals affirmed the convictions and sentences.  *Gilmore*,

2009 WL 2448150 at *1.  Petitioner raised the same seven issues in his *pro se* application for leave

to appeal to the Michigan Supreme Court.  *See* Application for leave (docket no. 23).  The Michigan

Supreme Court denied the application because it was "not persuaded that the questions presented

should be reviewed by this Court."  *People v. Gilmore,* 485 Mich. 1125 (March 29, 2010).

In his petition, Gilmore raised seven issues (in his words):

I.      Petitioner's convictions must be reversed where there is insufficient
        evidence that he conspired to commit the predicate felony of armed
        robbery.  The conviction violates petitioner's constitutional right to
        due process of law.  U.S. Constitutions Amendments V, XIV;
        Michigan Constitution Art I § 17.

3

II.    Newly discovered evidence reveals that prosecution witness Charles Smith, committed perjury at petitioners trial. Not impeachment or recantation. The denial of petitioners request for a new trial violated due process of law. In addition, the trial judge invaded the province of the jury when it found that the new evidence would not have altered the jury's finding of guilt. U.S. Constitutional Amendments V, XIV; Michigan Constitution Art I § 17.

III.    Trial counsel was ineffective under the Sixth Amendment when, with the exercise of reasonable diligence, being a short walk to the Clerk's Office to examine a co-defendant's file he would have learned about Mr. Garrett's testimony but counsel failed to do so. As such defendant was denied due process of law and his right to a fair trial.

IV.    Defendant is entitled to a new trial where the state violated his due process rights by failing to disclose materials that revealed that their "informant" might have lied under oath, thereby denying defendant of his due process right to a fair trial, U.S. Constitutional Amendments V, XIV; Michigan Constitution Art 1 § 17.

V.    Did the prosecutor deny petitioner a fair trial when he abandoned his clear legal duty to protect the rights of the petitioner by admitting irrelevant evidence into the trial that had no relevance to the petitioner, and which caused considerable prejudice and constituting plain error [i.e., the admission of an AR-15 rifle] . . . Petitioner says yes that this did occur contrary to his federal and state right to a fair trial as guaranteed by the 6th Amendments to the state and federal constitutions.

VI.    Petitioner was denied his Sixth Amendment Constitutional right to the effective assistance of trial counsel, and entitled to a Ginther 'Ginther' hearing to develop testimonial record to support his claim.

VII.    Petitioner Gilmore was deprived of his Constitutional XIV Amendment rights of due process when "**<u>African-Americans</u>**" were excluded from the jury pool and the jury selection, thereby depriving petitioner of his constitutional right to trial by a jury of his peers, and also his natural human right to be tried by his own people of color when being pooled for jury trial.

Petition at pp. 5-6 (docket no. 1) (emphasis in original).

4

In addition, petitioner included a statement regarding "[Michigan] Supreme Court Error" (in his words):

> The decision of the Michigan Supreme Court is without any merit as that it does not specifically address nor does it show that the Supreme Court has ever reviewed and answer fully the merits of petitioner Gilmore's claims and therefore, have issued an opinion that has resulted in a grave miscarriage of justice resulting in the continued incarceration of petitioner on crimes of which he is innocent, and as that the Michigan Supreme Court has not answered these questions presented, they have failed to determine if in fact the Michigan Court of Appeals decision is an error as petitioner is saying it is, leaving no other option available to petitioner except that of obtaining relief from this court through this properly filed and prepared petition for writ of habeas corpus.
>
> Petitioner states that the failure of the Michigan Supreme Court to review the questions presented deprived petitioner a full rights due process and created another liberty interest claim under the 6th and 14th Amendments to the Constitution and gave full jurisdiction to this Court to grant the writ unconstitutionally, resulting in a correction of a miscarriage of justice.

*Id.* at p. 32. The undersigned will refer to this "statement of error" as Issue VIII.

## II.   Procedural default

In Issue V, petitioner asserted that the prosecutor engaged in misconduct by (1) introducing into evidence an AR-15 rifle owned by co-defendant Jones, and (2) arguing that co-defendant Jones stole the murder weapon, a .22 Ruger, from Jones' stepfather. *See* Petition at PageID.25-28; Supplemental Brief on Appeal at pp. 2-7 (docket no. 22). Here, it appears that Issue V is procedurally defaulted and not subject to federal habeas review because petitioner failed to comply with a state procedural rule that requires defendants in criminal cases to present their claims to the trial court before raising them on appeal. Because petitioner did not comply with the state's contemporaneous-objection rule, the Michigan Court of Appeals treated petitioner's Issue V as

waived on direct appeal and reviewed it only for plain error. *Gilmore*, 2009 WL 2448150 at *8. "[A] state court's plain error analysis does not save a petitioner from procedural default. Plain error analysis is more properly viewed as a court's right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits." *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) (citations omitted).

Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). However, federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003). Judicial economy might counsel addressing the merits of a procedurally defaulted claim "if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). *See also, Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010) ("[w]e cut to the merits here, since the cause-and-prejudice analysis adds nothing but complexity to the case"). This is such a case. Accordingly, the Court will address the merits of the claims raised in Issue V rather than address a cumbersome procedural default analysis.

### III.    Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the

Constitution or laws or treaties of the United States."  Before petitioner may seek such relief in

federal court, she must first fairly present the substance of her claims to all available state courts,

thereby exhausting all state remedies.  *Picard v. Connor*, 404 U.S. 270, 275-78 (1971); *Clemmons*

*v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A).  In the present case,

petitioner has exhausted his state remedies with respect to his habeas claims.

       Where the state court has adjudicated a claim on its merits, the federal district court's

habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

       "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme

malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction

through appeal."  *Harrington v. Richter*, 562 U.S. 86, 101-102 (2011).  The AEDPA "imposes a

highly deferential standard for evaluating state-court rulings, and demands that state-court decisions

be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 776, 773 (2010) (internal quotation

marks and citations omitted).  This deferential standard "requires Petitioner to show 'the state court's

ruling on the claim being presented in federal court was so lacking in justification that there was an

error well understood and comprehended in existing [Supreme Court precedent] beyond any possibility for fairminded disagreement.'" *Blackmon v. Booker*, 696 F.3d 536, 538 (6th Cir. 2012), quoting *Harrington*, 562 U.S. at 103.  Thus, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (internal quotation marks omitted).

Under the "contrary to" clause of § 2254(d)(1), "a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Under the "unreasonable application" clause of § 2254(d)(1), "a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id*.  A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411.

Finally, a determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1).  A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).  The presumption of correctness accorded to a state court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

## IV.    Discussion

### A.    Insufficient evidence of conspiracy to commit armed robbery (Issue I)

Petitioner contends that there was insufficient evidence that he conspired to commit the predicate felony of armed robbery.  In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that Fourteenth Amendment's Due Process Clause protects a criminal defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *Winship*, 397 U.S. at 364.  Sufficient evidence supports a conviction if "after viewing the evidence in light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis added).  In evaluating a sufficiency of the evidence claim, the court views both direct evidence and circumstantial evidence in the light most favorable to the prosecution, drawing all available inferences and resolving all issues of credibility in favor of the factfinder's verdict.  *United States v. Rayburn*, 495 F.3d 328, 337-38 (6th Cir. 2007).  The reviewing court must presume that the trier of fact resolved conflicting inferences of fact in favor of the prosecution, and must defer to that resolution.  *Wright v. West*, 505 U.S. 277, 296-97 (1992). *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them").

The Michigan Court of Appeals addressed the elements of conspiracy to commit armed robbery as follows:

> MCL 750.157a provides that any person who conspires together with one or more persons to commit an offense prohibited by law or to commit a legal act in an

9

illegal manner is guilty of conspiracy. Conspiracy requires proof of both the intent to combine with others and the intent to accomplish the illegal objective. *People v. Mass*, 464 Mich. 615, 629; 628 NW2d 540 (2001). Thus, to establish defendant's guilt of conspiracy to commit armed robbery, the prosecutor was required to prove that defendant intended to combine with Jones to rob Redd while armed and that defendant intended that the armed robbery occur. *Id.*

*Gilmore*, 2009 WL 2448150 at *2.

The gist of petitioner's claim is that "[t]here is nothing submitted in evidence or at the trial showing that defendant [petitioner] AGREED with Jones to do ANYTHING." Petition at PageID.10 (emphasis in original). The appellate court rejected this claim:

Testimony and evidence presented at defendant's trial established: that defendant worked as a drug runner or "mule" selling drugs for Redd and that he sold heroin to Jones; that there was an unusually large amount of telephone contact between defendant and Redd and between defendant and Jones in the days leading up to Redd's murder; that there was no telephone contact between Jones and Redd in the six months preceding Redd's murder; that the home at 1318 Ohio Street ("1318"), where Redd was murdered, was owned by Jone's stepfather; that Jones borrowed the key to 1318 shortly before Redd's murder; that Jones also borrowed a .22 caliber Ruger rifle, which was the murder weapon, from his stepfather two days before the murder; that other actions were taken in apparent preparation for the meeting with Redd, including hanging tarps in the garage of 1318 where the meeting was to occur and purchasing fireworks that were then used in an attempt to camouflage the noise generated by the shooting; that Jones had taken defendant to the garage on at least two previous occasions; that on the day of Redd's murder two men fitting defendant's and Redd's descriptions were seen scuffling outside the garage, in the vicinity where two buttons from defendant's shirt were found, and that one of the men forced the other back into the garage; that Redd was shot and killed inside the garage; that Redd's blood was on the shirt, pants and shoes defendant was wearing at the time of Redd's murder and that the blood spatter on his clothes indicated defendant was in close proximity to Redd at the time he was shot; that money was taken from Redd's pockets; and that, after Redd was shot, men fitting defendant's and Jones's descriptions sped away from 1318 in Jones's mother's 1992 Oldsmobile Cutlass.

\*      \*      \*

There was no dispute that defendant was present when Redd was shot; the only question was whether he was "merely" present or whether he was an active

participant in a planned armed robbery of Redd, and ultimately, in Redd's murder. From our review of the record, we conclude that there was sufficient evidence to convict defendant of the predicate felony of conspiracy to commit armed robbery. We note specifically: (1) the absence of any phone contact between Jones and Redd in the six months preceding Redd's murder and the substantial increase in the amount of phone contact between Jones and defendant and defendant and Redd in the days leading up to the murder; (2) testimony that defendant and Redd "scuffled" outside the garage, as substantiated by the two buttons from defendant's shirt on the ground in that vicinity, with one of them pulling or forcing the other into the garage; and (3) testimony that defendant and Jones left the scene together, in Jones's mother's car and the absence of any testimony placing any vehicle driven by defendant in the vicinity, suggesting that they also arrived at the scene together.   Drawing all reasonable inferences and making credibility choices in support of the jury verdict, as this Court is required to do, the evidence presented was sufficient to permit a rational jury to infer that defendant arranged for Redd to come to 1318 on September 11, 2006, for the purposes of combining with Jones to rob Redd of heroin and/or money at gunpoint, and that defendant further participated in the crime by forcing Redd into the garage, where Jones then shot him.

*Id.* at *1-2.

The Michigan Court of Appeals applied the correct legal standard in evaluating petitioner's claim.  Contrary to petitioner's contention, the appellate court explained the factual basis which supported petitioner's conviction under M.C.L. § 750.157a.  To the extent that petitioner seeks to have this court overrule the Michigan Court of Appeals' construction of the state's conspiracy statute, this relief is not available.  In determining whether sufficient evidence exists to support a conviction on habeas review, the standard set forth in *Jackson* "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. 307 at 324, fn. 16.  The United States Supreme Court "repeatedly has held that the state courts are the ultimate expositors of state law" in federal habeas proceedings.  *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Petitioner cannot seek federal habeas relief based upon his disagreement with the state appellate court's construction of a state statute.  *See Pulley v. Harris*,

465 U.S. 37, 41 (1984) ("[a] federal court may not issue a writ on the basis of a perceived error of state law"). *See Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2nd Cir. 2002) (a sufficiency of the evidence claim "does not invite federal habeas courts to engage in a substantive analysis of state statutory terms" or "transform[] federal habeas courts into super-appellate state courts").

The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d).  Accordingly, petitioner is not entitled to relief on this claim.

### B. Newly discovered evidence regarding alleged perjury of prosecution witness Charles Smith and denial of a new trial (Issue II)

### 1. The newly discovered evidence

Petitioner contends that new evidence discovered after trial revealed that prosecution witness Charles Smith committed perjury during the trial.  The Michigan Court of Appeals provided the following explanation of the relationship between petitioner, co-defendant Jones, witness Charles Smith and affiant Arthur Garrett, and the nature of the alleged perjured testimony.

### a. Smith's testimony against co-defendant Jones

Jones was tried separately and was convicted of conspiracy to commit armed robbery, felony murder and felony firearm.  Charles Smith testified at Jones's trial that he knew defendant as a result of purchasing heroin from him and he knew Jones from "seeing him around different people who use" and that he "met him again in jail."  Smith testified further that, while he and Jones were both in jail, Jones confessed in detail to Redd's murder, telling Smith that defendant and Jones planned to rob Redd of heroin and money, but "pretty much everything went wrong"; that Redd did not want to "give everything up" and that Jones shot Redd after Redd and defendant started fighting.

*Gilmore*, 2009 WL 2448150 at *3.

### b.  Garrett's affidavit that Smith lied at Jones' trial

On November 7, 2007, Arthur Garrett, who had been housed with defendant for a short time in December 2006, and then with Smith thereafter, executed an affidavit in which he averred that Smith repeatedly told Garrett that he did not know anything about Jones's case and that he was being untruthful about Jones having confessed in order to try to get out of jail.  Jones moved for a new trial on the basis of Garrett's affidavit.  That motion was denied following a May 15, 2008 evidentiary hearing, at which Garrett and others testified.

*Id.*

### c.  Smith's testimony at petitioner's trial

At defendant's trial, Smith testified that he knew defendant "[t]hrough dealing drugs and stuff, heroin"; that he would meet up with defendant "[o]nce, twice, three times a week or so," depending on how much money he had, to buy heroin for his personal use; that Smith called defendant on his cell phone to arrange drug buys; and that the last time Smith bought heroin from defendant was near the end of August 2006.  Cellular telephone records showing that Smith called defendant 22 times in a six-month period ending on August 29, 2006 corroborated this testimony.  Smith testified further that, he knew Jones as a fellow drug user and purchaser of heroin from defendant, an assertion that defendant did not dispute. Additionally, Smith testified that on one occasion, late in August 2006, Smith, his brother, defendant and another person were riding in a van together and Smith overheard defendant telling someone "he was coming into, you know, quite a bit of heroin, about 200 grams or so."

*Id.*

### d.  Petitioner's use of Garrett's affidavit to support a new trial

In July 2008, defendant also moved for a new trial based on Garrett's affidavit, arguing that Smith's perjury was material to the outcome of defendant's trial.  An evidentiary hearing was held on this motion on November 6, 2008.  At this hearing, Garrett reiterated that Smith told him that he was giving false information to detectives so he could get out of jail.  The trial court denied defendant's motion, noting the evidence implicating defendant in Redd's murder, including eyewitness testimony, phone records and blood spatter evidence, and concluding it was not probable that a new trial would result in a different outcome.

*Id.*

13

e.    **The Michigan Court of Appeals' determination that petitioner was not entitled to a new trial based upon Garrett's affidavit and testimony**

The only uncorroborated testimony offered by Smith at defendant's trial was that he overheard defendant tell someone that he was "coming into" a large quantity of heroin.  Absent this testimony, there remained substantial evidence implicating defendant in planning an armed robbery of Redd, including the unusual amount of phone contact between Jones and defendant and Jones and Redd in the days leading up to the murder, the absence of any phone contact between Redd and Jones in the six months preceding the murder, eyewitness testimony about the "scuffle" outside the garage and about seeing defendant and Jones leave the scene together, the buttons from defendant's shirt found outside the garage, and the amount and pattern of Redd's blood on defendant's clothing.  Even were the jury to disbelieve Smith's testimony about overhearing defendant's purported statement, there remained sufficient evidence to convict defendant of the crime.  Nothing in Garrett's affidavit or testimony directly corroborated defendant's version of events or undermined the prosecution's version of events.  Defendant's assertion that there is significant and credible evidence that a prosecution witness perjured himself at trial about central issues in the case significantly overstates the importance of Smith's testimony, as well as the impact of Garrett's affidavit on that testimony.  Considering the brief and limited nature of Smith's uncorroborated testimony against defendant, and considering the other evidence against defendant as described above, the trial court did not abuse its discretion by denying defendant's motion for a new trial.

*Id.* at *4.

2.    **Petitioner's claims**

Petitioner contends that Smith "committed perjury, not impeachment or recantation," that the state trial court's failure to grant him a new trial violated due process of law, and that the state trial judge invaded the province of the jury when she found that the new evidence would not have altered the jury's finding of guilt.  Petitioner's claims fail.

First, petitioner's claim that the trial court did not recognize Smith's testimony as perjury is not cognizable on habeas review.  The writ of habeas corpus "is not the proper means by which prisoners should challenge errors or deficiencies in state post-conviction proceedings . . .

because the claims address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration." *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986). Accordingly, "[a] claim that a habeas petitioner is entitled to relief based upon the failure of a state trial judge to grant him a new trial on the basis of newly discovered evidence, is not cognizable in a habeas proceeding." *Niemiec v. Burt*, No. 2:13-cv-10180, 2016 WL 540705 at *8 (E.D. Mich. Feb. 11, 2016).

Second, although petitioner's statement of this issue cites the Fifth and Fourteenth Amendments, he presented this issue as a matter of state law by identifying the abuse of discretion standard of review as applicable to the trial court's decision on whether to grant a new trial. *See* Petition at PageID.13, citing *People v. Mechura*, 205 Mich. App. 481, 483 , 517 N.W.2d 797 (1994) ("[a] trial court's ruling on a motion for a new trial is reviewed for an abuse of discretion"). "[A] state trial court's alleged abuse of discretion, without more, is not a constitutional violation" subject to federal habeas review. *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001). *See Pulley*, 465 U.S. at 41 (federal court may not issue writ based on a perceived error of state law). Accordingly, this claim is not cognizable on federal habeas review.

Third, petitioner alleged that the trial judge invaded the province of the jury by denying the motion for a new trial. While both petitioner and his appellate counsel raised the issue as a violation of the Fifth and Fourteenth Amendments, they actually argued it as violations of the Sixth and Fourteenth Amendments. The Michigan Court of Appeals addressed the issue as a matter of state law:

> Defendant argues further that the trial court abridged his Sixth Amendment right to have a jury determine facts relevant to his guilt by concluding that it was not probable that a jury would reach a different conclusion on retrial. Essentially, defendant asserts that the trial court's analysis - and by implication, any "harmless error" analysis - invaded the province of the jury as the exclusive finder of fact. As

15

noted by the prosecutor, the case law primarily relied on by defendant in support of this argument addresses constitutionally deficient jury instructions. However, defendant does not assert that his jury instructions were constitutionally deficient. Nor does defendant offer any authority that a trial court is not permitted to evaluate newly discovered evidence in the manner undertaken here. Indeed, [*People v. Cress*, 468 Mich. 678, 691, 644 N.W.2d 174 (2003)], requires the very analysis undertaken by the trial court in response to a motion for a new trial based on newly discovered evidence.

*Gilmore*, 2009 WL 2448150 at *4 (footnote omitted). Under the procedure set forth in *Cress*, for a new trial to be granted on the basis of newly discovered evidence in Michigan, a defendant must demonstrate to the trial judge that: "(1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial." *Cress*, 468 Mich. at 692 (internal quotation marks omitted).

Petitioner's claim that the trial judge invaded the province of the jury in violation of the Sixth Amendment is without merit. The motion for a new trial was presented to the judge, not the jury. " In issues tried to the court it is the function of the court to determine the issues of fact and the credibility of testimony. A motion for new trial on the ground of newly discovered evidence is heard by the trial judge and it is his function to determine the credibility of all evidence that may be produced." *Connelly v. United States*, 271 F.2d 333, 335 (8th Cir. 1959). *See generally, United States v. Desir*, 273 F.3d 39, 42 (1st Cir. 2001) (in determining whether or not the defendant has satisfied the test for a new trial under Fed. R. Crim. P. 33, the court "has broad power to weigh the evidence and assess the credibility of both the witnesses . . . [and the] 'new' evidence"); *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 1988) ("In a Motion for New Trial, the trial judge

16

can consider the credibility of the witnesses and the weight of the evidence to insure that there is not

a miscarriage of justice.  It has often been said that he/she sits as a thirteenth juror."); *Grimm v. Lane*,

895 F. Supp. 907, 912 (S.D. Ohio 1995) (in determining whether to grant a new trial, "[t]he district

court may weigh the evidence and assess the credibility of witnesses").

The Michigan Court of Appeals' decision was neither contrary to, nor an

unreasonable application of, clearly established Federal law as determined by the Supreme Court;

nor was the decision based on an unreasonable determination of the facts in light of the evidence

presented. 28 U.S.C. § 2254 (d).  Accordingly, petitioner is not entitled to relief on this claim.

### C.      Prosecutor's failure to disclose material regarding the informant (Garrett) (Issue IV)

Petitioner contends that the government violated his due process rights by

withholding the Garrett affidavit.  The Michigan Court of Appeals framed the issue as a *Brady*

violation, i.e., "[d]efendant next argues that the prosecution violated his due process rights to

disclosure of exculpatory evidence as articulated by the United States Supreme Court in *Brady v.*

*Maryland*, 373 U.S. 83, 87; 83 S Ct 1194; 10 L.Ed.2d 215 (1963), when it failed to disclose the

existence of Garrett's affidavit before trial."  *Gilmore*, 2009 WL 2448150  at *6.

> *Brady* requires the prosecution to disclose exculpatory and impeachment evidence
> that is "material either to guilt or to punishment." *Strickler v. Greene*, 527 U.S. 263,
> 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (quoting *Brady*, 373 U.S. at 87, 83
> S.Ct. 1194).  "The evidence is material only if there is a reasonable probability that,
> had the evidence been disclosed to the defense, the result of the proceeding would
> have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87
> L.Ed.2d 481 (1985).  A *Brady* violation includes three elements: (1) the evidence
> "must be favorable to the accused, either because it is exculpatory, or because it is
> impeaching"; (2) the "evidence must have been suppressed by the State, either
> willfully or inadvertently"; and (3) "prejudice must have ensued." *Strickler*, 527 U.S.
> at 281–82, 119 S.Ct. 1936.

17

*Beuke v. Houk*, 537 F.3d 618, 633 (6th Cir. 2008). "[T]he duty to disclose such evidence is applicable even though there has been no request by the accused, and that the duty encompasses impeachment evidence as well as exculpatory evidence." *Strickler*, 527 U.S. at 280 (internal citations omitted).

The Michigan Court of Appeals rejected this claim stating in pertinent part as follows:

There is no dispute that the prosecution possessed Garrett's affidavit before defendant's trial, or that it had value for impeachment purposes. Both the United States Supreme Court and this Court have held that a prosecutor is required to turn over impeachment evidence favorable to the defendant. *See*, *e.g.*, *United States v. Bagley*, 473 U.S. 667, 678; 105 S Ct 3375; 87 L.Ed.2d 481 (1975); *People v. Banks*, 249 Mich.App 247, 254; 642 NW2d 351 (2002). As this Court has explained:

*        *        *

Thus, because impeachment evidence is considered exculpatory evidence under *Brady*, certainly the prudent course of action for the prosecution to take upon receipt of Garrett's affidavit would have been to notify defense counsel of the existence of that affidavit or to provide him with a copy of it. That said, however, the prosecution's failure to do so only warrants relief if there is a reasonable probability that it affected the outcome of the trial. As this Court explained in *Lester*, *supra* at 281-282:

The failure to disclose impeachment evidence does not require automatic reversal, even where, . . . the prosecution's case depends largely on the credibility of a particular witness. The court still must find the evidence material. Undisclosed evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Accordingly, undisclosed evidence will be deemed material only if it could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. . . .

In general, impeachment evidence has been found to be material where the witness at issue supplied the only evidence linking the defendant to the crime or where the likely effect on the witness'[s] credibility would have undermined a critical element of the

prosecutor's case.  In contrast, a new trial is generally not required where the testimony of the witness is corroborated by other testimony or where the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable.  [Citations and internal quotation marks omitted.]

Defendant asserts that Smith's testimony was the only evidence linking defendant to any plan to rob Redd.  However, this assertion greatly overstates the import of Smith's testimony, which was almost completely corroborated by other evidence.  Further, as discussed above, considering the evidence against defendant, including the cellular telephone records, and the evidence and eyewitness testimony substantiating defendant's role in the events leading up to Redd's murder, defendant cannot establish that the likely effect of Garrett's affidavit on Smith's credibility would have undermined a critical element of the prosecutor's case, *Lester*, *supra*, or that its disclosure would have, with reasonable probability, resulted in a different outcome at trial, *Cox*, *supra*.  Therefore, no relief is warranted.

*Gilmore*, 2009 WL 2448150 at *7-8.

The Court concludes that no *Brady* violation occurred because petitioner was not prejudiced by the prosecution's failure to provide the Garrett Affidavit for the reasons set forth by the Michigan Court of Appeals.  In addition, while the Garrett affidavit attacked Smith's credibility, the jury was on notice that Smith had a motive to be untruthful at petitioner's trial because he was cooperating with the prosecution in exchange for a plea in a separate case involving home invasion, dismissal of charges for safe-breaking, and an agreed to sentencing range.  *See* Trial Trans. 5 at pp. 815-817 (docket no. 18).

The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).  Accordingly, petitioner is not entitled to relief on this claim.

19

### D.        Prosecutorial misconduct (Issue V)

The Michigan Court of Appeals noted that in his supplemental brief on appeal, petitioner argued "that the prosecutor committed misconduct by introducing evidence that Jones possessed an AR-15 assault rifle after the events in question, and by noting for the jury, in his opening statement and closing argument, that Jones 'jimmied' open the lock on a gun safe to access the .22 Ruger rifle used to kill Redd." *Gilmore*, 2009 WL 2448150 at *8. The appellate court found that these issues were unpreserved on appeal and limited its review to plain error. *Id.*

The Michigan Court of Appeals addressed these claims as follows:

Defendant has not established that the admission of cursory evidence that Jones possessed an AR-15 rifle following Redd's murder prejudiced him in any way. Defendant acknowledges that it was established at trial that this rifle had no connection to the offenses of which defendant was charged or to defendant, and at no point did the prosecutor argue or imply otherwise. Evidence that Jones possessed the weapon shortly after Redd's murder was presented simply as part of the circumstances surrounding the investigation. Thus, there is no indication that introduction of this evidence was undertaken in bad faith, for the purpose of prejudicing the defendant. And, evidence that Jones possessed the rifle, having no connection to defendant or to the crimes at issue, cannot be said to have prejudiced defendant's defense. Therefore, defendant has not established prosecutorial conduct warranting relief predicated on the introduction of testimony relating to the AR-15 rifle.

Regarding comments by the prosecutor discussing Jones's acquisition of the .22 Ruger rifle used in Redd's murder from his stepfather, these comments accurately described the testimony of Jones's stepfather, who testified that Jones asked to borrow the gun two days prior to Redd's murder and that he told Jones that he could borrow the gun, but he did not know where the key to the gun safe was, so Jones "jimmied" open the lock. Prosecutors are afforded great latitude during argument, and they may argue the evidence and all reasonable inferences that arise from the evidence in relationship to the theory of the case. [Citations omitted.] Here, the prosecutor's theory was that Jones and defendant conspired to rob Redd of his heroin and money at gunpoint, and that when Redd resisted, Jones shot him. The prosecutor's comments pointed to evidence tying Jones to the murder weapon and substantiated the existence of a plan between defendant and Jones, at least two days before the crime, to rob Redd at gunpoint. The prosecutor's accurate comment on

this evidence did not in any way deprive defendant of a fair trial, and defendant's assertion of prosecutorial misconduct lacks merit.

*Gilmore*, 2009 WL 2448150 at *9.

When a habeas petitioner makes a claim of prosecutorial misconduct, the touchstone of due process analysis is the fairness of the trial, not the culpability of the prosecutor, and habeas relief is not warranted unless that misconduct is so egregious as to deny the petitioner a fundamentally fair trial. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974); *Hutchison v. Bell*, 303 F.3d 720, 750 (6th Cir. 2002); Serra v. Michigan Department of Corrections, 4 F.3d 1348, 1355 (6th Cir. 1993).    The relevant question is whether the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and internal quotations omitted). Because petitioner's attorney did not make a contemporaneous objection, the prosecutor's conduct must constitute plain error. *See United States v. Modena*, 302 F.3d 626, 633-34 (6th Cir. 2002).  To meet this standard, petitioner must demonstrate that the conduct was improper and so exceptionally flagrant as to warrant a reversal of the trial. *Id.*   The court should consider four factors in determining whether a prosecutor's improper remarks are so flagrant as to rise to the level of a due process violation: (1) the likelihood that the prosecutor's remarks tended to mislead the jury or to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) whether the remarks were accidentally or deliberately placed before the jury; and (4) the total strength of the evidence against the accused. *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005).

Although Issue V is purportedly a claim for prosecutorial misconduct, the petition does not address this alleged constitutional violation nor cite any federal law relevant to prosecutorial

misconduct.  *See* Petition at PageID.25-28.  Rather, petitioner attacks the admission of evidence under state law claiming that neither weapon (i.e., the AR-15 or the .22 Ruger rifle) was relevant evidence under MRE 401 and that the admission of this evidence was prejudicial under MRE 404(B).  *Id.*  Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[F]ederal habeas corpus relief does not lie for errors of State law." *Id.* at 67, *quoting Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  Consequently, state court rulings on the admission of evidence are not subject to federal habeas review unless the error denied petitioner a fundamentally fair trial. *Clemmons v. Sowders*, 34 F.3d 352, 357-358 (6th Cir. 1994); *see Estelle*, 502 U.S. at 67-70.

The Court agrees with the Michigan Court of Appeals' determination that petitioner's defense was not prejudiced by the admission of this evidence.  On the contrary, the appellate court observed that "evidence that Jones possessed the rifle, regardless whether it was connected to the crime, was consistent with, and helpful to defendant's assertion that Jones was a cold-blooded killer, who acted alone in robbing and murdering Redd." *Gilmore*, 2009 WL 2448150 at *11.  In addition, evidence as to how Jones obtained the Ruger is relevant because it was the murder weapon. The admission of evidence regarding these weapons did not deny petitioner a fundamentally fair trial. Accordingly, petitioner is not entitled to relief on this claim.

### E.    Due process related to jury venire (Issue VII)

Petitioner contends that he was deprived of his XIV Amendment right of due process when "African-Americans were excluded from the jury pool and the jury selection, thereby depriving petitioner of his constitutional right to trial by jury of his peers, and also his natural human right to be tried by his own people of color when being pooled for jury trial." *See* Issue VII.

22

The Sixth Amendment, which guarantees trial by jury, forbids racial discrimination in the selection of jurors and requires the jury venire from which the trial jury is selected to represent a "fair cross-section of the community." *Duren v. Missouri*, 439 U.S. 357, 364-65 (1979).   To establish a prima facie violation of the fair-cross-section requirement, a criminal defendant must show that (1) the group allegedly excluded is a "distinctive" group in the community; (2) the group was not fairly represented in the venire from which the petit jury was chosen; and (3) the under-representation resulted from a systematic exclusion of the group in the jury selection process. *Duren*, 439 U.S. at 364.   A petit jury does not need to precisely "mirror" the racial composition of the community in which it sits in order to pass constitutional muster.  *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975).  "The Sixth Amendment guarantees only the opportunity for a representative jury, not a representative jury itself."  *Ambrose v. Booker*, 684 F.3d 638, 645 (6th Cir. 2012).  "The focus, therefore, is on the procedure for selecting juries, and not the outcome of that process."  *Id.*

The Michigan Court of Appeals identified petitioner's claim "that he was deprived of his constitutional right of due process to a jury drawn from a venire representative of a fair cross-section of the community in which the case was tried, by the exclusion of African-Americans from his jury venire."  *Gilmore*, 2009 WL 2448150 at *9.   In rejecting this claim the appellate court found that petitioner did not establish a prima facie violation of this fair cross-section requirement under *Duren*:

> Underrepresentation of a distinctive group may be measured by measuring the disparity between the number of group members in the jury array and the number of group members in the community.  [*People v. Hubbard (After Remand)*, 217 Mich.App 459, 474, 552 NW2d 493 (1996)].   However, the requirement that a defendant be tried by a fair cross section of his community does not guarantee that any particular jury "actually chosen must mirror the community.  . . ." *Taylor v. Louisiana*, 419 U.S. 522, 538; 95 S Ct 692; 42 L.Ed.2d 690 (1975); *People v.*

*Howard*, 226 Mich.App 528, 532-533; 575 NW2d 16 (1997); *Hubbard*, *supra* at 472. Rather, "the Sixth Amendment guarantees an opportunity for a representative jury by requiring that jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to constitute a fair cross section of the community." *Hubbard*, *supra* at 472-473.

Here, defendant is a member of a distinctive group, and he has offered some evidence, by way of census data, that the group of which he is a member was underrepresented in his jury venire. However, defendant has offered no evidence that African-Americans generally are underrepresented in Ingham County Circuit Court jury venires, or that such underrepresentation is the result of systematic exclusion. As this Court explained in *People v. Flowers*, 222 Mich.App 732, 736-737; 565 NW2d 12 (1997).

> While a criminal defendant is entitled to an impartial jury drawn from a fair cross section of the community, he is not entitled to a petit jury that exactly mirrors the community. In order to show a prima facie violation of the fair-cross-section requirement, a defendant must show, among other things, that the underrepresentation of the distinctive group, in this case African-Americans, was due to systematic exclusion. Furthermore, it is well settled that systematic exclusion cannot be shown by one or two incidents of a particular venire being disproportionate. Here, defendant's bald assertion that systematic exclusion must have occurred because no African-Americans were in the array is not sufficient to support his challenge. [Citations omitted.]

*See also*, *People v. Williams*, 241 Mich.App 519, 526; 616 NW2d 710 (2000) (Evidence establishing that African-Americans were underrepresented in the defendant's particular array is not sufficient, alone, to establish a prima facie case of systematic exclusion); *Howard*, *supra* at 533 ("Merely showing one case of alleged underrepresentation does not rise to a 'general' underrepresentation that is required for establishing a prima facie case."). Here, as in *Williams*, *supra* at 527, to establish his claim, "[d]efendant has the burden of demonstrating a problem inherent within the selection process that results in systematic exclusion." Defendant has not presented any such evidence of systematic exclusion, and his failure to do so renders his claim meritless.

Further, with respect to defendant's request for a remand in order to conduct an evidentiary hearing on this matter, no affidavit or offer of proof regarding the Ingham County jury selection process or regarding the composition and selection of

the jury array in this particular case has been submitted.  Therefore, defendant has failed to establish a need for an evidentiary hearing.  *See* MCR 7.211(C)(1)(a)(ii).

*Id.* at *10-11.

The Michigan Court of Appeals reasonably determined that although petitioner was a member of a distinctive group, he did not offer any evidence that African-Americans generally are underrepresented in Ingham County Circuit Court jury venires or that there was systematic exclusion of African-Americans.  This determination was consistent with the requirements of *Duren*, *Taylor* and *Ambrose*.

The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d).  Accordingly, petitioner is not entitled to relief on this claim.

> **F.    Trial counsel was ineffective when he failed to examine co-defendant's file to learn about Arthur Garrett's testimony  (Issue III), failed to object to prosecutorial misconduct (Issue V) and failed to object to the jury venire (Issue VI)**

**1.    Legal standard**

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687.  In making this determination, the court "must judge the

reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*, 466 U.S. at 689-690. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult," because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential', and when the two apply in tandem, review is 'doubly' so[.]" *Harrington*, 562 U.S. at 105 (internal citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable," but rather "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

## 2.    Failure to examine co-defendant's file

Petitioner contends that his trial counsel was ineffective for failing to examine co-defendant Jones' court file, and that if counsel had performed such an examination, this examination would have resulted in the discovery of Garrett's testimony.   The Michigan Court of Appeals addressed petitioner's ineffective assistance of counsel claim as follows:

> Defendant next argues, in the alternative, that his trial counsel was ineffective for failing to examine Jones's court file, which would have resulted in the discovery of Garrett's affidavit, prior to defendant's trial.  We agree with the trial court that, as discussed above, defendant has not established a reasonable probability that the outcome of his trial would have been different had defense counsel become aware of Garrett's affidavit.

*        *        *

Defendant asserts that his trial counsel's failure to "take 20 minutes to look at" Jones's court file, without more, constituted a failure to make a reasonable investigation under the "prevailing professional norms." Defendant does not indicate that he asked his counsel to review Jones's file, or that counsel had any indication that something of value to the defense was contained in the file. Rather, defendant asserts that his counsel was required, in the ordinary course of preparing a defense and in order to be deemed to have exercised reasonable diligence under prevailing professional norms, to examine Jones's court file. However, defendant cites no authority for the proposition that the failure to examine a co-defendant's court file, without some prior indication that information favorable to the defendant is contained in that file, renders counsel's investigation unreasonable. He presented no testimony or affidavits to the effect that, under the circumstances presented here, examination of a co-defendant's file is required by an objective standard of reasonableness. Thus, defendant has failed to establish that his counsel's failure to examine Jones's court file constitutes deficient performance.

Even were this Court to assume that counsel was required to examine Jones's file as part of a reasonable investigation, however, we further conclude that defendant cannot establish that he was prejudiced by that failure. Defendant asserts that had his counsel discovered Garrett's affidavit in Jones's court file, and used it, or called Garrett to testify at trial, to impeach Smith's testimony against defendant, there is a reasonable probability that the outcome of the trial would have been different. However, as discussed above, Smith's testimony against defendant was limited to the details of their relationship as drug dealer and buyer, which was corroborated by cell phone records, to testimony that Smith knew Jones as a fellow user and fellow buyer from defendant, which was not disputed, and to testimony that Smith overheard defendant comment that he was "coming into" a large quantity of heroin. Thus, it is only this last statement that may have been impacted by testimony that Smith told Garrett that he was lying about having information concerning Redd's murder. Considering the other evidence presented implicating defendant in the plan to rob Redd and establishing his participation in the events leading to Redd's murder, defendant has not established a reasonable probability that the outcome of his trial would have been different had his counsel presented testimony by Garrett (either in person or by way of affidavit) that Smith told him he was "making up" his testimony about the case. Therefore, defendant has not met his burden of showing prejudice resulting from the alleged deficient performance, and consequently, his claim of ineffective assistance of counsel lacks merit.

*Gilmore*, 2009 WL 2448150 at *5-6.

Here, the Michigan Court of Appeals properly applied the *Strickland* test. *Id.* at *5.

The undersigned is aware of no authority, and petitioner has cited none, which require one co-

defendant's defense counsel to examine another co-defendant's "court file" without some prior indication that information favorable to counsel's client is contained in the co-defendant's "court file." Furthermore, the Court agrees with the state appellate court's determination that even if such a duty existed, petitioner was not prejudiced given the other evidence in this case.

The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on this claim.

### 3.    Counsel's failure to object

The Michigan Court of Appeals characterized these claims of ineffective assistance of counsel as involving: (1) trial counsel's failure to object to the prosecutor's comments regarding Jones' acquisition of the Ruger rifle from the gun safe; (2) trial counsel's failure to object to introduction of evidence pertaining to the AR-15 rifle; and, (3) trial counsel's failure to object to the absence of African-Americans among the veniremen. *Gilmore*, 2009 WL 2448150 at *11. The Court's review of these unpreserved ineffective assistance of counsel claims was limited to mistakes apparent on the record. *Id.* The Michigan Court of Appeals found that because the alleged instances of prosecutorial misconduct and the claim regarding the jury venire lacked merit, petitioner's counsel was not ineffective for raising meritless or futile objections. *Id.* at *11.

### a.    Jury venire

As discussed in § IV.E., *supra*, petitioner's claim regarding the jury venire was without merit. Counsel cannot be ineffective for failing to raise meritless or futile arguments with respect to it. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("[o]mitting meritless

28

arguments is neither professionally unreasonable nor prejudicial"); *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("[c]ounsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel"); *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993) ("[t]he Sixth Amendment does not require counsel . . . to press meritless issues before a court").

### b.    The Ruger and AR-15

As discussed in § IV.D., *supra*, the petition did not develop any claim with respect to prosecutorial misconduct involving the Ruger and the AR-15, and he was not prejudiced by the admission of this evidence.  Absent prejudice, petitioner cannot establish ineffective assistance of counsel.  *See Strickland,* 466 U.S. at 687.

The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d).  Accordingly, petitioner is not entitled to relief on these claims.

### G.    Michigan Supreme Court error (Issue VIII)

Petitioner contends that the Michigan Supreme Court's failure to review the questions presented in his application for leave to appeal violated his due process rights.  This claim is unexhausted because petitioner did not raise it in the state court.  As a general rule, a habeas petition containing unexhausted claims should be dismissed without prejudice.  *See Rose v. Lundy*, 455 U.S. 509, 518-20 (1982).  Here, petitioner could raise this issue in a motion for relief from judgment under MCR 6.500 *et seq.*  Therefore, one option would be for this Court to stay this action and allow petitioner to exhaust this claim.  However, federal courts have the discretion to deny habeas relief on the merits regardless of whether the petitioner has exhausted his state remedies.  *See* 28 U.S.C.

§ 2254(b)(2) ("[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); *Prather v. Rees*, 822 F.2d 1418, 1421-22 (6th Cir. 1987) (lack of exhaustion was properly excused where the petition was plainly meritless, addressing the merits of the claim will not offend federal-state comity, and addressing the merits will be efficient, noting that "[e]fficiency includes bringing criminal litigation to a final conclusion").

Here, the Court will excuse exhaustion because petitioner's habeas claim is without merit.  It is axiomatic that "[t]he Federal Constitution imposes on the States no obligation to provide appellate review of criminal convictions." *Halbert v. Michigan*, 545 U.S. 605, 610 (2005). Michigan, however, has established a two-tier appellate system, in which appeals from the Michigan Court of Appeals to the Michigan Supreme Court are heard by leave only. *See Halbert*, 545 U.S. at 612; M.C.L. § 770.3(6) ("[f]urther review of any matter appealed to the court of appeals under this section may be had only upon application for leave to appeal granted by the supreme court").  While petitioner contends that the Michigan Supreme Court failed to consider the questions presented in his application for leave to appeal, the fact that the state court exercised its discretion  in denying the leave to appeal did not result in a due process violation.

> Stating the obvious: not every contention, request, or reason becomes a constitutional matter just because it is labeled due process.  A denial of relief that is purely discretionary, by definition, does not involve a constitutional right and is therefore not protected by the due process clause.

*Abunasser v. Holder*, 343 Fed. Appx. 756, 759-60 (3d Cir. 2009).  *See Assaad v. Ashcroft*, 378 F.3d 471, 475 (5th Cir.2004) ("the failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest") (internal quotation marks omitted).  *See also*, *Erving*

*v. Lafler*, No. 2:08-CV-12258, 2010 WL 1754344, at *7 (E.D. Mich. Apr. 29, 2010) ("[d]enial of

leave to appeal to the state highest court is not a violation of due process rights") (citing *Wainwright*

*v. Torna*, 455 U.S. 586, 587-88 & n. 4 (1982) (federal habeas petitioner was not denied due process

by the state supreme court's dismissal of an untimely-filed application for discretionary review or

by retained appellate counsel's failure to file a timely application for discretionary review with that

court, because petitioner neither had an absolute right to appeal his conviction to the state supreme

court nor a constitutionally-protected right to effective assistance of counsel in seeking discretionary

review by the state supreme court)).   Accordingly, petitioner's claim of error should be denied.

## V.     Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**.  Rule 8, Rules

Governing § 2254 Cases in the United States District Courts.

I further recommend that a certificate of appealability be denied.  *See Slack v.*

*McDaniel*, 529 U.S. 473 (2000).


Dated:  August 1, 2016                    /s/ Ray Kent
                                          RAY KENT
                                          United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk
of the Court within fourteen (14) days after service of the report.  All objections and responses to
objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections
within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474
U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).